**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DONMISCE CLARK,

      Petitioner,                                CASE NO. 2:07-15309
                                                HONORABLE PAUL D. BORMAN

v.                                            UNITED STATES DISTRICT JUDGE

CARMEN PALMER,

      Respondent.

_____/

### OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

      Donmisce Clark, ("petitioner"), confined at the Thumb Correctional Facility in Lapeer, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his application, filed by Susan M. Meinberg, petitioner challenges his conviction for two counts of first-degree felony murder, M.C.L.A. 750.316; M.S.A. 28.548; two counts of premeditated murder, M.C.L.A. 750.316; M.S.A. 28.548, and one count of assault with intent to commit murder, M.C.L.A. 750.83; M.S.A. 28.278.  For the reasons stated below, the application for a writ of habeas corpus is DISMISSED WITH PREJUDICE**.**

## I.  BACKGROUND

      Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court, in which he was jointly tried with co-defendants Horace Clark and Arthur Sumerlin.  This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001):

1

In these consolidated appeals, defendants were convicted of various charges arising out of multiple shootings at a Detroit drug house. Two victims died from gunshot wounds, and a third individual survived after being shot in the head. [1]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Jovan Stanton testified that defendant Sumerlin at first held her, Corey Brown, and the two children at gunpoint in the upstairs of the home. Sumerlin forced Stanton and the others to put pillowcases over their heads. At gunpoint, Sumerlin then ordered everyone to go downstairs. Stanton further testified that on her way down the steps, she saw Pia Stanton lying on the floor wrestling with defendant Horace Clark, and she saw defendant standing next to Pia. Stanton stated that defendant then directed Sumerlin to take her, Brown, Armanda, and Lexus to the basement. Sumerlin took the four down to the basement as directed and forced them to sit on the floor. Stanton testified that she heard "bumping" noises going on upstairs for a couple of minutes, followed by a gunshot and silence. After the gunshot, one of the intruders joined Sumerlin and the four victims down in the basement, although Stanton could not identify whether it was Horace Clark or defendant. Sumerlin then forced Stanton, Armanda, and Lexus into a basement bathroom; Brown was left outside the bathroom door. As he was directing Stanton into the bathroom, Sumerlin took her jewelry and one of the other intruders took her money. While in the bathroom, Stanton, who had been speaking with Brown through the door, heard a gunshot within close range, and Brown was not heard from again. Soon thereafter, Stanton was led to the basement stairs, with Sumerlin in front of her and one of the other intruders behind her. Stanton was then shot in the head at close range. Armanda testified that it was Horace Clark who at first held the victims at bay upstairs and forced them to put pillowcases over their heads. Armanda stated that, as Horace Clark was leading her downstairs, she observed defendant and Sumerlin wrestling with Pia Stanton. When the victims and Horace were all down in the basement, Armanda heard bumping noises coming from upstairs and then a gunshot. Defendant then came down to the basement and directed Horace to take the four occupants into the basement bathroom. Additionally, as noted above, Katrina Brown testified that the three defendants were together at her home on the day of the crime and then left together, shortly before the crimes were committed, following a call from a woman who spoke with defendant.

*People v. Clark,* No. 256190, * 1, 8 (Mich.Ct.App. December 29, 2005).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 477 Mich. 854; 720 N.W. 2d 740

(2006).

Petitioner seeks a writ of habeas corpus on the following grounds:

---

[1] The two murder victims were Pia Stanton and Corey Brown, and the surviving victim is Jovan Stanton.(footnote original).

2

1. DEFENDANT IS ENTITLED TO A NEW TRIAL WHERE DEFENDANT'S FEDERAL CONSTITUTIONAL RIGHT TO CONFRONTATION WAS VIOLATED WHERE THE SINGLE JURY IN THIS JOINT TRIAL WAS PERMITTED TO HEAR THE OFFICER'S TESTIMONY REGARDING THE CO-DEFENDANT'S STATEMENT, WHERE THE ERROR WAS NOT HARMLESS UNDER THE *BRECHT* "SUBSTANTIAL AND INJURIOUS EFFECT" STANDARD, AND WHERE THE MICHIGAN COURT OF APPEALS IMPROPERLY INVADED THE PROVINCE OF THE JURY BY WEIGHING CONFLICTING TRIAL EVIDENCE.

II. DEFENDANT WAS DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE TRIAL COURT'S REFUSAL TO EITHER SEVER HIS TRIAL OR SEAT A JURY SEPARATE FROM THAT OF HIS CODEFENDANTS.

III. DEFENDANT WAS DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, WHEN TRIAL COUNSEL FAILED TO TIMELY MOVE TO SEVER OR REQUEST A SEPARATE JURY.

IV. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR DIRECTED VERDICT, IN VIOLATION OF DUE PROCESS OF LAW, WHERE THE EVIDENCE PRESENTED BY THE PROSECUTION WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT HE WAS THE PRINCIPAL OR THAT HE AIDED AND ABETTED THE MURDERS AND THE ASSAULT, IN THAT IT FAILED TO SHOW BEYOND A REASONABLE DOUBT MORE THAN MERE PRESENCE WITH KNOWLEDGE THAT AN OFFENSE WAS ABOUT TO BE COMMITTED, OR PASSIVE ACQUIESCENCE.

## II.    STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

 A decision of a state court is "contrary to" clearly established federal law if the state

3

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at

410-11.

## III.  DISCUSSION

### A. Claims # 1, # 2, and # 3.  The Bruton/severance/ineffective assistance of counsel claims.

The Court will consolidate petitioner's first three claims because they are interrelated.

In his first claim, petitioner contends that his Sixth Amendment right to confrontation was

violated when the trial court admitted co-defendant Sumerlin's out of court statement to the

police.  In his second related claim, petitioner contends that the trial court erred in failing to

sever petitioner's trial from his co-defendants' trial, in light of Sumerlin's statement.  In his

third claim, petitioner contends that counsel was ineffective for failing to move for a separate

trial.

Codefendant Sumerlin's out-of-court statement to the police was read to the jury.

Sumerlin told the police that he, Horace Clark, and petitioner went to the home where the

crimes were committed on the day of the murders in order to purchase illegal drugs.  According

to Sumerlin, when the three defendants arrived at the home around 2:00 p.m., an

African-American male was leaving the house and there were two other men inside the home.

4

Sumerlin described these two men as being tall, with one having a light complexion and the other a medium complexion.  Sumerlin told the police that he, Horace Clark, and petitioner purchased three ounces of drugs, before leaving the home. Sumerlin told the police that neither he, Horace Clark, nor petitioner had a gun when they went to the home.  Sumerlin denied that any of the three defendants shot the victims.

In rejecting petitioner's first claim, the Michigan Court of Appeals ruled that the Confrontation Clause of the federal constitution barred the admission of Sumerlin's statement, but found that the admission of this statement was harmless error.  The Michigan Court of Appeals noted that Sumerlin's statement did not indicate or suggest in any fashion that petitioner committed the murders and the assault or that he aided and abetted in the crimes. *Clark,* Slip. Op. at * 5.  In fact, Sumerlin's statement expressly contended that petitioner had nothing to do with the crimes and also provided information that implicitly suggested that other persons at the house may have been the perpetrators of the murders and the assault. *Id.* Although petitioner contended that Sumerlin's statement undercut his misidentification defense by placing him at the scene of the crimes, the Michigan Court of Appeals noted that there was other evidence which placed petitioner at the house.  The surviving assault victim, Jovan Stanton, identified petitioner as one of the perpetrators in a photographic lineup and also identified him at trial as the man who was standing next to her aunt, Pia Stanton, who was murdered shortly thereafter.  Stanton also identified petitioner as the man who directed that Jovan and the others be taken to the basement.  The Michigan Court of Appeals noted that a second witness who was also at the crime scene, Armanda, also identified petitioner at trial as one of the perpetrators.  Finally, there was evidence presented that petitioner and Horace Clark

5

were brothers, and Katrina Brown testified that the three defendants were together at her home on the day of the crime and then left together, shortly after 1:30 p.m. or so, following a call from a woman who spoke with defendant.  The 911 call to police by Jovan Stanton was placed at 2:21 p.m.  The Michigan Court of Appeals concluded that there was evidence that all three defendants were together shortly before the crimes were committed. *Id.*  Finally, the trial court adamantly instructed the jury that it could only consider Sumerlin's statement relative to rendering a verdict in the prosecutor's case against Sumerlin and not Horace Clark or petitioner; the statement could not be used against petitioner in any form or fashion.  In light of the evidence other than Sumerlin's statement, and considering the jury instruction, the Michigan Court of Appeals concluded that any error was harmless beyond a reasonable doubt. *Id.* at p. 6.

As an initial matter, it is unclear whether petitioner's Sixth Amendment rights were violated by the admission of Sumerlin's statement.  Where a co-defendant's incriminating confession is admitted at a joint trial and the co-defendant does not take the stand, a defendant is denied the constitutional right of confrontation, even if the jury is instructed to consider the confession only against the co-defendant. *Bruton v. United States*, 391 U.S. 123, 127-128 (1968).  However, no *Bruton* violation results where the statement does not expressly implicate a defendant in the charged offense because such a statement would not be "powerfully incriminating". *Richardson v. Marsh,* 481 U.S. 200, 208 (1987); *Vincent v. Parke*, 942 F. 2d 989, 991 (6th Cir. 1991).  Indeed, *Bruton's* "narrow exception" to the "almost invariable assumption of the law that jurors follow their instructions," *Marsh*, 481 U.S. at 206-07, is applicable only when a "codefendant's confession 'expressly implicat[es]' the defendant as his accomplice." *Id.* at 208 (*quoting Bruton*, 391 U.S. at 124, n. 1).

6

In the present case, Sumerlin's statement to the police did not implicate petitioner in the murders or the assault.  In fact, Sumerlin told the police that neither petitioner or his two co-defendants had anything to do with the murders or the assault.  Because Sumerlin's statement did not expressly implicate petitioner as an accomplice to any crime, but instead exculpated petitioner by suggesting that petitioner did not participate in the murders or the assault, the admission of Sumerlin's statement did not violate petitioner's Sixth Amendment rights. *See U.S. v. Simpson*, 116 Fed.Appx. 736, 741-42 (6th Cir. 2004); *vacated on other grds sub nom Bowers v. United States,* 543 U.S. 995 (2005).

Although petitioner claims that Sumerlin's statement undermined his misidentification defense by placing him at the crime scene, the Supreme Court has rejected this kind of "contextual implication," *Marsh,* 481 U.S. at 209, noting that "the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial." *Id*. at 208.  When, as here, a codefendant's statement is "not facially incriminating of [the defendant] and could only have been incriminating when linked with other evidence, [the] redacted statement [does] not pose *Bruton* problems." *United States v. Sherlin,* 67 F. 3d 1208, 1216 (6th Cir. 1995).  Because Sumerlin's statement did not expressly incriminate petitioner as an accomplice to the murders and the assault, the admission of this statement did not violate petitioner's Sixth Amendment rights.

Moreover, regarding petitioner's related second claim, because the out-of-court statements made by the Sumerlin did not expressly incriminate petitioner, the failure to sever petitioner's trial did not prejudice petitioner. *See Clark v. O'Dea,* 257 F. 3d 498, 504 (6th Cir. 2001)(citing *Sherlin,* 67 F. 3d at 1215).

7

Moreover, assuming that the trial court erred in admitting Sumerlin's statement into evidence, the admission of the statement was harmless error at best.  A federal court can grant habeas relief only if the trial error had a substantial and injurious effect or influence upon the jury's verdict, regardless of whether the state court has conducted an harmless error analysis. *Fry v. Pliler*, 127 S. Ct. 2321, 2327 (2007)

In determining whether a *Bruton* violation is harmless, a reviewing court must decide "'whether the 'minds of an average jury'" would have found the State's case against a defendant "'significantly less persuasive'" had the incriminating portion of the co-defendant's statement been excluded. *Stanford v. Parker,* 266 F. 3d 442, 456 (6th Cir. 2001)(*citing Hodges v. Rose*, 570 F. 2d 643, (6th Cir. 1978)(*quoting Schneble v. Florida*, 405 U.S. 427, 432 (1972)).

In the present case, the admission of Sumerlin's statement into evidence did not have a substantial and injurious effect or influence on the verdict.  First, as mentioned above, Sumerlin's statement did not expressly incriminate petitioner in any crime.  In fact, the statement was exculpatory.  Secondly, two eyewitnesses placed petitioner at the crime scene at the time of the shootings.  A third witness, Katrina Brown, placed petitioner with the other two co-defendants during the time period when the shootings took place.  Accordingly, Sumerlin's statement was merely cumulative to the other evidence and its admission at trial was harmless. *See Jackson v. Renico,* 320 F. Supp. 2d 597, 606 (E.D. Mich. 2004); *See also Miller v. Miller*, 784 F. Supp. 390, 398 (E.D. Mich. 1992)(error in admitting co-defendant's statement was harmless, where portions of the co-defendant's statement was either substantiated by petitioner's own statements or other evidence submitted at trial).  At a minimum, this Court cannot state that "the 'minds of an average jury'" would have found the prosecution's case

8

against petitioner "'significantly less persuasive'" had Sumerlin's statement been excluded. *Stanford,* 266 F. 3d at 456.  Accordingly, petitioner is not entitled to habeas relief on his first and second claims.

In his third claim, petitioner contends that trial counsel was ineffective for failing to move for a separate trial based on the fact that Sumerlin's statement would be introduced at trial.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

"[T]he prejudice question, for purposes of an ineffective assistance of counsel claim, 'is essentially the same inquiry as made in a harmless-error analysis.'" *Johnson v. Renico,* 314 F. Supp. 2d 700, 711 (E.D. Mich. 2004).  In light of the fact that the admission of Sumerlin's statement at the joint trial was harmless error at best, petitioner is unable to establish that he was prejudiced by counsel's failure to move for a separate trial.  Petitioner is not entitled to habeas relief on his first, second, or third claims.

**B.  Claim # 4.  The sufficiency of evidence claim.**

In his fourth claim, petitioner contends that there was insufficient evidence to establish that he participated in the two murders and in the assault, claiming that at best, the evidence established that petitioner was merely present when the murders and the assault took place.

9

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002). The scope of review in a federal habeas proceeding to the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock,* 208 F. Supp. 2d 780, 794 (E.D. Mich. 2002).  Finally, a habeas court does not substitute its own judgment for that of the finder of fact. *See Crenshaw v. Renico,* 261 F. Supp. 2d 826, 832 (E.D. Mich. 2003).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(*citing People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318

(1992)).  The elements of premeditation and deliberation may be inferred from the

circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596

(E.D. Mich. 2001)(*citing People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780

(1995)).  Premeditation may be established through evidence of the following factors:

> 1. the prior relationship of the parties;
> 2. the defendant's actions before the killing;
> 3. the circumstances of the killing itself;
> 4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F. 3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is incapable

of exact determination, the interval between initial thought and ultimate action should be long

enough to afford a reasonable man time to subject the nature of his response to a 'second

look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)((*quoting People

v. Vail,* 393 Mich. 460, 469; 227 N.W. 2d 535 (1975)).  "A few seconds between the

antagonistic action between the defendant and the victim and the defendant's decision to murder

the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v.

Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003).   "[A]n opportunity for a 'second look' may

occur in a matter of seconds, minutes, or hours, depending upon the totality of the

circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596(*quoting People v.

Berthiaume*, 59 Mich. App. 451, 456 (1975)).  Premeditation and deliberation may be inferred

from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198

Mich. App. 123, 128; 497 N. W. 2d 202 (1993).  Use of a lethal weapon will support an

inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich.

App. 467, 470; 233 N.W. 2d 617 (1975)).  Finally, premeditation and intent to kill may be

11

inferred from circumstantial evidence. *See DeLisle v. Rivers,* 161 F. 3d 370, 389 (6th Cir. 1998).


Under Michigan law, the elements of assault with intent to commit murder in Michigan are: (1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder. *See Warren v. Smith,* 161 F. 3d 358, 361 (6th Cir. 1998); *See also Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

> *Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006)(citing *Carines*, 460 Mich. at 757-58).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F. 2d 420, 424 (6th Cir. 1981).  Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995).  The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton*; 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *Long,* 450 F. Supp. 2d at 753; *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992).  The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995).  An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *People v. Turner,* 213 Mich. App. at 568-69.

Petitioner is correct that a defendant's mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 236 Mich. App. 411, 419-20; 600 N. W. 2d 658 (1999); *Fuller*, 662 F. 2d at 424.  However, a claim of mere presence is not a "catch-all excuse" to defeat an inference of guilt beyond a reasonable doubt.  In evaluating a "mere presence" defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability. *See Long*, 450 F. Supp. 2d at 754 (citing *Duran v. Pepe*, 899 F. Supp. 839, 843 (D. Mass. 1995)).  An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal.  Such acts may be silent and may not be overt but may still amount to more than

13

'mere' presence." *Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002).  Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support." *Id.*

There was sufficient evidence in this case to establish that petitioner aided and abetted his co-defendants with the murders and the assault with intent to commit murder.  Jovan Stanton testified that Sumerlin held her, Corey Brown, and two children at gunpoint in the upstairs of the home.  Sumerlin forced Stanton and the others to put pillowcases over their heads, before ordering them at gunpoint to go downstairs. While walking downstairs, Stanton observed Pia Stanton lying on the floor wrestling with co-defendant Horace Clark, while petitioner was standing next to Pia.  Jovan Stanton testified that petitioner directed Sumerlin to take her, Brown, Armanda, and Lexus to the basement.  Sumerlin took the four down to the basement as directed and forced them to sit on the floor.  Jovan Stanton testified that she heard "bumping" noises going on upstairs for a couple of minutes, followed by a gunshot and silence. After the gunshot, one of the other men joined Sumerlin and the four victims down in the basement, although Stanton could not identify whether it was Horace Clark or petitioner. Sumerlin then forced Stanton, Armanda, and Lexus into a basement bathroom; Brown was left outside the bathroom door.  As he was directing Stanton into the bathroom, Sumerlin took her jewelry and one of the other intruders took her money.  While in the bathroom, Stanton, who had been speaking with Brown through the door, heard a gunshot within close range, and Brown was not heard from again.  Stanton was then led to the basement stairs, with Sumerlin in front of her and one of the other intruders behind her.  Jovan Stanton was then shot in the head

14

at close range.

Armanda testified that it was Horace Clark who at first held the victims at bay upstairs and forced them to put pillowcases over their heads. Armanda testified that while Horace Clark was leading her downstairs, she observed petitioner and Sumerlin wrestling with Pia Stanton. When the victims and Horace were downstairs in the basement, Armanda heard bumping noises coming from upstairs and then a gunshot. Petitioner then came down to the basement and ordered Horace to take the four victims into the basement bathroom. Finally, Katrina Brown testified that the three defendants were together at her home on the day of the crime and then left together, shortly before the crimes were committed, following a call from a woman who spoke with petitioner.

As the Michigan Court of Appeals indicated in rejecting petitioner's claim, minimally the evidence showed that petitioner "worked in unison with his codefendants and that he performed acts or gave encouragement, i.e., wrestling with Pia Stanton before she was shot and directing that the victims be taken to the basement and then to the bathroom, that assisted in the commission of the crimes; he was an active participant, not an innocent, passive bystander." *Clark,* Slip. Op. at * 8-9. Further, the fact that multiple victims were shot in the head at different times at close range (execution style), with two having been forced to place pillowcases over their heads, provided evidence of malice, premeditation, and deliberation.

Moreover, common sense would indicate that the other participants in these serious criminal activities would not have permitted a "noncontributing interloper" to remain with them inside of this house "while their conspicuous criminal conduct continued unabated." *United States v. Batista-Polanco,* 927 F. 2d 14, 18 (1st Cir. 1991); *See also United States v. Staten*, 581

15

F. 2d 878, 885 (D.C. Cir. 1978)(presence in small apartment replete with indicia of ongoing drug-distribution enterprise in open view "could rationally have been viewed as a privilege reserved exclusively for participants").  A "factfinder may fairly infer....that it runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes." *Batista-Polanco,* 927 F. 2d at 18.

In light of the evidence presented in this case, the Michigan Court of Appeals' rejection of petitioner's mere presence claim was not an unreasonable application of clearly established federal law, so as to entitle him to habeas relief. *See Long,* 450 F. Supp. 2d at 754.

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 871, 885 (E.D. Mich. 2002).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the

16

appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.    CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**


S/Paul D. Borman                                  
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE


Dated:  June 1, 2009


CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 1, 2009.


S/Denise Goodine                                   
Case Manager

17